IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BANCINSURE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OAKLAND STATE BANK, GREAT WESTERN BANK, DWIGHT STEWART, and RICK WAYMASTER,<br><br>Defendants.<br><br><br>GREAT WESTERN BANCORPORATION, and GREAT WESTERN BANK,<br><br>Counter Claimants,<br><br>v.<br><br>BANCINSURE, INC.,<br><br>Counter Defendant. | Civil No: 1:05-cv-00015-HDV-RAW<br><br><br><br><br><br><br><br><br><br><br><br><br><br>RULING GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND ORDER |

Plaintiff BancInsure brings a claim for declaratory judgment against defendants Oakland State Bank and Great Western Bank (together "the bank" because Great Western Bank purchased Oakland State Bank and is Oakland State Bank's successor in interest) asking the court to declare that the losses the bank seeks to recover under a fidelity bond issued by BancInsure are not covered by the bond.[1]  Great Western Bank, as the successor in interest of Oakland State Bank, and Great Western Bancorporation, the sole shareholder of Great Western Bank, bring counterclaims against BancInsure alleging that BancInsure, by not paying the amounts claimed by the bank under the bond, breached the terms of the bond and breached its

---

[1]BancInsure also brings claims for indemnity against defendants Dwight Stewart and Rick Waymaster, but these claims are not at issue in the pending motion.

duty of good faith and fair dealing.  BancInsure moves for partial summary judgment on its declaratory judgment claim against the bank and on both counterclaims, arguing that as a matter of law the bond at issue does not cover the bank's claims for losses in its stock value.  Oakland State Bank, Great Western Bancorporation, and Great Western Bank (hereinafter "the resisters") resist the motion.  The court heard oral arguments on May 16, 2006, and the motion is submitted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted only when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Walsh v. United States, 31 F.3d 696, 698 (8th Cir. 1994).  An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The substantive law at issue governs which facts are material; irrelevant or unnecessary fact disputes do not preclude summary judgment.  Id.

## BACKGROUND FACTS

BancInsure issued a financial institution bond to Oakland State Bank insuring against "[l]oss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others."  (Plf.'s App. at 0002.)  Iowa law requires that all officers or employees of a state bank who are charged with care, custody, or control of bank funds must be bonded.  Iowa Code § 524.705.  Such a bond, referred to as a fidelity bond, must indemnify the bank against losses "incurred by reason of any act or acts of fraud, dishonesty . . . or other unlawful act committed by such officer or employee . . . until all of the officer's or employee's accounts with the state bank are fully settled and satisfied."  Id.  The BancInsure bond specifically excludes "indirect or consequential loss of any nature."  (Plf.'s App. at 0019.)  A statutory fidelity bond of this nature secured by a bank to cover its employees is referred to by the parties as a financial institution bond.  Such a bond also may be referred to as a "banker's blanket bond."  The parties agree that the BancInsure bond is a statutory bond.

2

During the period of coverage, defendants Stewart and Waymaster, both executive employees at Oakland State Bank, allegedly received secret payments from a mortgage company in exchange for their approval of loans to individuals who were not qualified under the bank's lending standards.[2]  BancInsure alleges Waymaster was the main culprit in this scheme.  In addition to the "secret fees loans," Stewart allegedly made other loans to unqualified individuals including family members and individuals outside the bank's service area.  In total, these unqualified loans were for multiple hundreds of thousands of dollars.  For the purposes of the motion, BancInsure and the resisters agree both that these alleged actions of the executive employee defendants were "dishonest or fraudulent acts" under the BancInsure bond, and that the bank sustained some "losses" covered by the BancInsure bond.

At some time after the unqualified loans were discovered, Great Western Bank acquired Oakland State Bank.  The bank filed three proofs of loss with BancInsure.  The bank included in the proofs of loss the decrease in the value of Oakland State Bank's stock that the bank claimed resulted from the unqualified loans' effect on the bank's loan portfolio.  BancInsure refused to pay certain amounts of the bank's asserted covered losses, including the claimed loss of stock value.  The bank brought an action in Iowa state court against BancInsure.  BancInsure paid the bank the amounts of loss it did not dispute, roughly $40,000, and filed this action seeking declaratory judgment in respect to the other amounts.  BancInsure did not remove the state case, which is still pending in Iowa District Court.

BancInsure now seeks partial summary judgment on its claim against the bank and also seeks partial summary judgment on both counterclaims.  BancInsure argues the bank's claim for loss of stock value is not a covered loss under the bond it issued and that it is entitled to partial summary judgment in respect to the proportion of the bank's claim representing lost stock value.  The bank argues that loss of stock value is a covered loss under the BancInsure bond and that summary judgment should be denied.

---

[2]Stewart and Waymaster are defendants in this case, but are not parties to this motion.  Both deny all alleged wrongdoing.  (Plf.'s Stmt. of Mat. Facts at ¶ 23.)

**DISCUSSION**

The first issue is whether, under Iowa insurance law, a statutory fidelity bond, like the BancInsure bond, covers losses in stock value caused by employee fraud.  A statutory fidelity bond is a contract for indemnity where the insurer indemnifies a bank for certain losses with the statute governing what losses are required to be covered.  American Trust & Sav. Bank v. United States Fid. & Guar. Co., 418 N.W.2d 853, 854 (Iowa 1988).  A statutory bond covers all required losses whether or not the language of a specific statutory bond reflects coverage.  Id. at 854.  If the statute does not require a statutory bond to cover losses in stock value, the second issue is whether the terms of the BancInsure bond extended coverage beyond the minimum required coverage to cover such losses.  Id. at 851.  In respect to both issues, American Trust, 418 N.W.2d at 854-55, is instructive.

In American Trust, the Iowa Supreme Court was faced with a statutory banker's blanket bond under Iowa Code § 524.705, which contained language almost identical to that at issue in the BancInsure bond.  Id.  The court construed the statute by focusing on its language, holding that the term "losses" under the statue refers to "the actual depletion of bank funds caused by the employee's dishonest acts and not to the eventual personal liability of the employee to the bank . . . . the covered loss is that which arises at the time and place that the specified misconduct occurred."  Id. at 855.  In other words, the court held "the covered loss under the bond and statue at issue is that which occurs at the time of the original wrongdoing."  Id.

At issue in American Trust were more than four million dollars worth of fraudulent notes drawn on the bank by one of its executives.  Id. at 854.  The executive perpetrated a "roll-over" embezzlement scheme: over a number of years, he drew fraudulent notes on the bank, paid them off by drawing successive fraudulent notes, paid the interest by drawing more fraudulent notes, and continued this cycle.  Id.  The bank argued that the statute covered the entire amount of the notes, the losses resulting from the effects of the fraud on the bank's balance sheets, lending limits, and reserves, and the bank's losses from paying income tax on the interest.  Id. at 855-56.  The court rejected these arguments, determining first that the bank suffered no loss from the notes drawn to pay interest because the bank's assets were not diminished in fact—the notes

4

were used to pay interest back to the bank.  Id. at 855.  The court noted that if the insurer were to pay the amount of the notes drawn to pay interest, the bank would be better off than if the fraud had not occurred.  Id. at 856.  The court also refused to find loss due to the effect of the fraud on the bank's books.  Next, the court determined that the bank's payment of income tax on the interest on the notes did not result from the original misappropriation, but resulted from the executive's subsequent act of covering up the prior embezzlements.  Id.  Therefore, the court concluded that under the terms of the bond the income tax losses were not the result of the original bad acts because they did not arise at the time of the fraud.  Moving to the language of the bond, the court also concluded that the bond at issue did not extend coverage beyond the minimum required by the statute.  Id.

In First American State Bank v. Continental Insurance Co., 897 F.2d 319, 325-26 (8th Cir. 1990), the Eighth Circuit applied the rule from American Trust in a case also addressing a statutory financial institution bond under section 524.705.  The court noted that "loss" under section 524.705 covers *actual depletion of bank funds* caused by an employee's dishonest acts.  Id. (citing American Trust, 418 N.W.2d at 855.)  The court held that funds expended to settle the bank's liability for wrongful acts by the bank's agent were losses resulting directly from the agent's wrongful acts and, therefore, were losses covered by the bond.  The court reasoned that the funds the bank expended to settle its liability for the wrongful loans were lost as a direct result of the employee's wrongful conduct.  In Kansas Bankers Surety Co. v. Farmers State Bank, 408 F. Supp. 2d 751, 755-56 (S.D. Iowa 2005), this court in a decision by Magistrate Judge Walters relied on First American and American Trust to conclude that language of a bond requiring a direct loss was not surplusage because losses the statute requires a bond to cover are direct losses.  Judge Walters held that a direct loss occurred when bank funds were disbursed pursuant to a fraudulent loan scheme.  Id. at 757.

The resisters argue that the issue whether a loss is a direct loss is a question of causation, not contract or statutory construction, and that this is a disputed issue of material fact.  The legal framework and analysis applied by the American Trust court, however, undermines this argument.  To determine whether the bank sustained a loss covered by the statutory bond, that

5

court construed the statute first and the bond second.  It made no mention of causation, and
therefore, the determination is a matter of construction.

The argument is also not convincing because the Iowa Supreme Court rejected the bank's
asserted losses in American Trust, including financial effects on that bank's balance sheets,
lending limits, and reserves, and the bank's losses from paying income tax on the interest.  These
losses sought by the bank in American Trust seem to have been the proximate result of the
executive employee's fraud, or at least there was an issue of fact as to proximate causation.  If
the American Trust court had applied the proximate cause concept of direct loss pressed here by
the resisters, therefore, it would have either determined that the loss was covered under the
statutory bond or would have remanded for trial on the issue.

The primary problem with the resisters' argument, however, is that they confound the
"losses resulting directly from" language of the BancInsure fidelity bond with language referring
to losses caused by accidents or acts of nature in cases addressing the extent of coverage of
insurance policies covering losses due to these events.  In the context of a liability policy, for
example, the Iowa Supreme Court has noted that because they have different purposes, "[a]
fidelity bond must be distinguished from a liability policy."  City of Burlington v. Western
Surety Co., 599 N.W.2d 469, 473 (Iowa 1999).  Cases construing other insurance policies that
cover losses due to accidents or acts of nature also have little to do with construction of a fidelity
bond because the instruments are different in nature.  The differences in the risks involved, in
addition to the different purposes behind the instruments, justify applying principles of
proximate cause in the one case, but not the other.  Losses resulting "directly" from bank
employee fraud, therefore, are not necessarily comparable to "direct" losses from accidents or
acts of nature.  For these reasons, Iowa courts apply proximate cause principles to determine
whether losses are the direct result of an accident or an act of nature when construing policies
covering losses caused by such events, see e.g., Kintzel v. Wheatland Mut. Ins. Ass'n, 203
N.W.2d 799, 808 (Iowa 1973); Qualls v. Farm Bureau Mut. Ins. Co., 184 N.W.2d 710, 713
(Iowa 1971);  Bettis v. Wayne County Mut. Ins. Ass'n, 447 N.W.2d 569, 571 (Iowa App. 1989),
but the same courts do not apply proximate cause principles to construe coverage required under

statutory fidelity bonds.

The resisters identify only one case applying proximate cause principles in respect to a fidelity bond.  In <u>Mid-America Bank of Chaska v. Am. Cas. Co. of Reading</u>, 745 F. Supp. 1480, 1485 (D. Minn. 1990), the court held that the question whether a banker's blanket bond covered losses resulting from dishonest renewing of loans as opposed to dishonest granting of loans was a question of proximate cause for the jury.  In <u>Mid-America Bank</u>, however, the court treated the extent of the bond's coverage as a fact question instead of a question of law.  In Iowa cases, the extent of a statutory bond's coverage is a question of law.  <u>Ferguson v. Allied Mut. Ins. Co.</u>, 512 N.W.2d 296, 299 (Iowa 1994).  Only if extrinsic evidence drives an interpretation of a term under a policy does the question become a mixed question of fact and law.  <u>Id.</u>

The resisters also note that section 524.705 does not distinguish between direct and indirect losses, and that the <u>American Trust</u> court did not address this issue.  The absence in the statute of a distinction between direct loss and indirect loss is not important to the analysis.  Determining the minimum coverage required by a statutory bond requires interpretation of the term "loss" as used in section 524.705.  Under the <u>American Trust</u> "actual depletion of bank funds" standard, a decrease in stock value is not a covered loss.  I conclude that section 524.705 does not require that statutory fidelity bonds cover a decrease in stock value resulting from employee fraud, whether or not the decrease is a direct or indirect result of the fraud.

Although the statute does not require the BancInsure fidelity bond to cover stock value losses, the bank is entitled to recover for these losses if the bond extended coverage beyond that required by the statute.  <u>American Trust</u>, 418 N.W.2d at 854.  As BancInsure notes, the language of its bond expressly excludes "indirect or consequential loss of any nature."  This language demonstrates that the parties did not intend that the bond would cover stock value losses.  The resisters point to nothing in the text of the bond suggesting otherwise and rely principally on their proximate cause argument.  I conclude, therefore, that the language of the BancInsure bond shows the parties did not intend to extend its coverage to these losses.  Because neither the statute nor the language of the BancInsure bond requires it, I conclude that the bond does not cover the bank's lost stock value.

**RULING AND ORDER**

For the reasons articulated above, BancInsure's motion for partial summary judgment is **GRANTED**, and it is **ORDERED** and **DECLARED** that plaintiff BancInsure, Inc. is not liable to defendants Oakland State Bank, Great Western Bancorporation, and Great Western Bank under the financial institution bond it issued to defendant Oakland State Bank, which is the subject of this suit, for any losses in the value of defendant Oakland State Bank's stock that may have resulted from any fraud or bad acts by defendants Rick Waymaster and Dwight Stewart.

Dated this 6th day of June, 2006.

HAROLD D. VIETOR
Senior U.S. District Judge